RECEIVED

MAR − 5 2012

TONY R. MOORE, CLERK
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE, LOUISIANA

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

LAFAYETTE DIVISION

| | |
|---|---|
| MADELEINE B. CAILLET and JAMES H. FONTAINE | CIVIL ACTION NO. 10-1852 |
| VERSUS | JUDGE DOHERTY |
| REGIONS FINANCIAL CORPORATION and REGIONS BANK | MAGISTRATE JUDGE HILL |

### MEMORANDUM RULING

Currently pending before the Court is a motion to dismiss [Doc. 13], filed by defendants

Regions Financial Corporation and Regions Bank ("Regions"), whereby defendants "move this

Court pursuant to Federal Rule of Civil Procedure 12(b)(6) to dismiss in its entirety the Complaint

against Regions by Plaintiffs," arguing the complaint "fails to state facts or claims upon which relief

may be granted, and should be dismissed with prejudice." [Id. at 1]

Jurisdiction over this matter exists pursuant to 28 U.S.C. 1332, as complete diversity of

citizenship exists between the parties, and the amount in controversy exceeds $75,000.00. [Doc. 1,

¶ 4]

I.     **Factual Background**

Plaintiffs' complaint sets forth the following allegations:

3.

Regions is the successor-in-interest to the Bank of New Roads ("BNR"). . .
. By virtue of its acquisition of BNR, Regions is responsible for all liabilities and
contractual commitments made by or on behalf of BNR before the acquisition, as
well as Regions' own actions and inactions, liabilities and contractual commitments.

. . . .

1

The BNR Agreements

5.

The Plaintiffs were investors and members of the Board of Directors of BNR prior to its merger with Regions. Ms. Caillet was elected to the Board of Directors of BNR in 1981, and Mr. Fontaine was elected to the Board of Directors of BNR in 1989.

6.

Both plaintiffs served continuously and without interruption as Directors of BNR from the time of their respective initial elections until March 31, 1995, when BNR was acquired by Regions pursuant to a merger between the two bank holding companies.

7.

While Plaintiffs were serving as Directors of BNR, BNR adopted and established a Non-Tax Qualified Plan of Deferred Compensation (the "BNR Agreement") that permitted members of the Board of Directors of BNR to defer the compensation and fees they earned for their work as Directors of BNR as well as compensation for their work on Committees and Advisory Boards established by BNR. . . .

8.

Ms. Caillet executed her original BNR Agreement on July 1, 1989. Similarly, Mr. Fontaine executed his original BNR Agreement on November 1, 1989.

. . . .

10.

On several different occasions after the original BNR Agreement was adopted, Plaintiffs and BNR agreed to modify the original BNR Agreement in various respects. One of those amendments, dated July 1, 1993, defined the term "Director" under the BNR Agreement as a "...Director of the Bank on the effective date of this agreement." The individual Directors who were specifically named in their respective amendments included the Plaintiffs, who were serving as active Directors of BNR on the effective dates of that and other amendments.

2

11.

To provide for the certain liabilities BNR owed to Plaintiffs under the BNR Agreements, BNR purchased insurance policies on the lives of Plaintiffs while they were Directors of BNR (the "BNR Policies"). The benefit amounts of the BNR Policies as respects [sic] plaintiffs totaled $1.5 million. . . .

The Merger

12.

BNR merged with Regions on March 31, 1995. As part of the merger, the Plaintiffs were immediately appointed as members of the Regions' Advisory Board of Directors.

13.

Plaintiffs' participation as Directors under the Agreements continued without interruption after the Regions/BNR merger in essentially the same form and fashion as it had before the merger. . . .   Additionally, Regions took ownership of the BNR Policies as of the date of the BNR/Regions merger.

The Split Dollar Agreement

14.

In the Spring of 2000, Regions presented Plaintiffs, in their capacity as Regions Directors, with a proposed "Endorsement Split-Dollar Agreement." Pursuant to that Split-Dollar Agreement, Regions procured, owned and paid the premiums on a separate, split-dollar, life insurance policy on Plaintiffs' lives, a policy that was issued by MONY, purporting to have a policy benefit of $100,000.00 to each Director. Ms. Caillet and Mr. Fontaine signed the Split-Dollar Agreement in 2000, in their capacity as Directors of Regions.

15.

Regions then took the paid up life insurance policies already in place (the BNR policies) and, despite having no insurable interest in the lives of Mr. Fontaine and Ms. Caillet, cut a deal with The Balser Companies of Atlanta, Georgia, to purchase new life insurance policies covering each of the BNR/Regions Directors. Regions represented to each of the Directors that the new policy provided a $100,000 death benefit, and that each Director could designate the beneficiary of his/her choice on that policy. But Regions didn't tell the Directors the whole story. In truth, Regions cashed in the old BNR policies and used them to purchase the new policy with

3

MONY. The MONY policy benefit on the life of Ms. Caillet is $700,000.00, while the policy benefit on Mr. Fontaine's life is $800,000.00 (the "Regions Policies").

. . . .

Holding Out

. . . .

19.

As Regions did not like the compensation scheme prescribed in the BNR Agreement for Directors who either reached or were approaching retirement age, or who died as a Director, Regions set out to get rid of the BNR Agreements and shirk the responsibilities it had expressly assumed upon its merger with BNR.

20.

To set this plan in motion, Regions called a meeting of the BNR Board of Directors and sent its Vice President of Human Resources, Harry Dinkens, Jr., to meet with the BNR Board members. At the meeting, Dinkens presented the Board members with a replacement package that Regions claimed was more lucrative and beneficial for the Directors than the BNR Agreement (the "Regions Plan"). Following that meeting, all of the Board members agreed to cancel their BNR Agreements and go with the new Regions Plan, except for three holdouts, namely, Van Major, Madeline Caillet and James Fontaine (the "Three Holdouts").

21.

When the Three Holdouts refused to cancel their BNR Agreements, Regions quietly decided to go forward with its plan to maximize gains and minimize losses under the BNR Agreements, but this time at the sole expense of the Three Holdouts.

22.

To effectuate its plan, Regions set out to systematically and unilaterally terminate the Three Holdouts as Regions Directors as soon as each of them approached a triggering event which would have precipitated payment of full benefits under the BNR Agreement.

4

Consequences of Holding Out

23.

In late 2004, Regions decided to consolidate two small-town advisory boards into a larger "Louisiana" Regional Board based in Baton Rouge. The BNR board members were told at the time that only 3 of their board members would be selected for the Regional Board.

. . . .

27.

. . . . Ms. Caillet, who was the longest serving BNR director and the largest BNR/Regions shareholder on the Board, was summarily dropped from the Board only 18 months before she attained Regions' mandatory retirement age. Had she been allowed to continue her tenure, Ms. Caillet would have qualified for full retirement benefits under her BNR Agreement ($69,705.00 annually for 15 years). By dropping her from the Board, Regions sought to save hundreds of thousands of dollars that it verily owes Ms. Caillet under the Agreement. All the while, Regions continues to hold a paid-up insurance policy on Ms. Caillet's life, under which Regions will collect $700,000.00 when Madeleine dies.

. . . .

30.

Moreover, for more than three years after her forced, involuntary termination from the Board in December 2004, Regions' Human Resources Department refused to deal with Ms. Caillet. Regions tendered no payments to her, and never advised what she could expect to receive in benefits over the next 15 years. Then on August 6, 2007, out of the blue, Regions sent Ms. Caillet a letter along with a check in the amount of $61,154.87, which Regions purported represented payments for the almost three previous years under the Agreement, plus interest. However, the payment was not only inadequate, it came three years later than required under the Agreement, which constituted breach. The check was returned to Regions by Ms. Caillet.

31.

Mr. Fontaine fared no better. While he was initially selected for the Louisiana Regional Board and served Regions with distinction for five more years, true to form, on May 3, 2010, as Mr. Fontaine approached Regions' mandatory retirement age, Regions summarily dropped him from the Regional Board.

5

32.

By letter of May 12, 2010, Regions advised Mr. Fontaine that he would receive his first distribution (a check for $12,662.79) on July 1, 2010, purportedly the first of 15 annual payments to him as a "former" BNR/Regions Director under the old BNR Agreement. In contrast, as a "retired" Director, Mr. Fontaine was entitled to receive $45,379.61 annually for 15 years (or a total of $680,694.15) upon his reaching Regions' mandatory retirement age. Regions intends to pocket the substantial difference.

33.

While Regions did issue a check to Mr. Fontaine in the amount of $12,662.79 on July 1, 2010, the payment was inadequate as it was a blatant attempt by Regions to shirk its responsibilities under the BNR Agreement and the BNR/Regions merger. The check was returned to Regions by Mr. Fontaine.

. . . .

38.

The life benefits now proposed by Regions amount to nothing more than the return to Plaintiffs of far less than the accrued balances of their deferred compensation accounts at Regions, and will allow Regions to pocket millions of dollars as an extraordinary, unearned, non-taxable windfall, rather than ethically honoring the intent of the parties.

[Doc. 1, pp. 2-11]

## II.    Motion to Dismiss Standard

"A pleading that states a claim for relief must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief . . . ." Fed. R. Civ. P. 8(a)(2). The purpose of the foregoing rule is to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)(quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).

Where a complaint fails to state a claim upon which relief can be granted, the court is permitted to dismiss the complaint as a matter of law. Fed. R. Civ. P. 12(b)(6); *see also Ramming*

6

*v. United States*, 281 F.3d 158, 161 (5th Cir. 2001) ("Motions to dismiss for failure to state a claim are appropriate when a defendant attacks the complaint because it fails to state a legally cognizable claim."). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct. 1937, 1949 (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.*

The general rule when deciding a Rule 12(b)(6) motion is that if matters outside of the pleadings are presented and not excluded by the court, the motion must be treated as one for summary judgment pursuant to Rule 56. Fed. R. Civ. P. 12(b); *see also Clark v. Tarrant County, Texas*, 798 F.2d 736, 745 (5th Cir. 1986). One exception to the general rule is that "the Court may review the documents attached to the motion to dismiss . . . where the complaint refers to the document and they are central to the claim." *Kane Enterprises v. MacGregor (USA), Inc.*, 322 F.3d 371, 374 (5th Cir. 2003)

## III.     Analysis

### A.     Conversion

Plaintiffs assert a claim for conversion, as follows:

48.

Plaintiffs had the longest tenures of service on the BNR/Regions Board, and were recognized by Regions as outstanding board members. At all times, they served Regions with honor and dedication, and duly performed all of the duties incumbent

7

upon them as Directors, as well as their obligations under the Agreement. In turn, Plaintiffs had every expectation that Regions would reciprocate with good faith and fair dealings with them. Instead, once they approached retirement age, Regions chose to invest in their demise so that Regions could position itself to improperly convert for its own use the $1.5 million in death benefits under the MONY policy, monies that were specifically designed and intended to benefit Plaintiffs and their beneficiaries.

49.

Regions' plan to wrongfully convert the policy proceeds for its own exclusive benefit effectively transformed the subject policies into 'dead peasant insurance,' in violation of the insurable interest doctrine and/or La. R.S. 22:613, by virtue of which Plaintiffs are entitled to have their designated beneficiaries recover the policy proceeds directly from MONY in full, and without discount or offset, upon their respective deaths.

[Doc. 1, p. 15]

From a review of the briefing, as well as the complaint, it appears plaintiffs argue defendant's "plan to wrongfully convert the policy proceeds for its own exclusive benefit": (1) gives rise to an action for "conversion," and (2) is a violation of the insurable interest doctrine and/or La. R.S. 22:613.

In its motion to dismiss, defendant argues that pursuant to Louisiana law: (1) any claim for conversion is not yet ripe, because no benefits are payable until a Director dies, and therefore no "conversion" of the funds has yet occurred; (2) even if plaintiffs ever had a "possessory right to designate the beneficiaries of the entire death benefit of the policy" - as opposed to plaintiffs' right to designate a beneficiary who would receive $100,000 of the entire death benefit - that cause of action has prescribed; and (3) Regions had an insurable interest in the plaintiffs at the time the insurance contracts were made.

First, the Court notes both parties have briefed this issue pursuant to Louisiana law. However, the Split-Dollar Agreement states, "This Agreement, and the rights of the parties

hereunder, shall be governed by and construed in accordance with the laws of the State of Alabama." [Doc. 13-3, p.6] Neither party has addressed what bearing, if any, this provision of the split-dollar agreement has upon claims sounding in contract as opposed to tort.

Additionally, the Court notes plaintiffs argue in their opposition memorandum that Regions served as plaintiffs' fiduciary when the insurance policies were purchased pursuant to the Split-Dollar Agreement, and "[b]ecause Regions acquired the policies under false pretenses when Regions had no insurable interest in plaintiffs, because Regions withheld full disclosure of the policy terms from plaintiffs, and because Regions actively asserts ownership and control over the policies, an action for conversion by a fiduciary has accrued and the claim is ripe for adjudication." [Doc. 24, p.21] Defendant on the other hand denies owing any fiduciary duty to plaintiffs, arguing plaintiffs have failed "to assert in their Complaint or in their Opposition any facts that would establish the existence of a fiduciary duty." In support, defendant cite(s) to that portion of the BNR Agreement which states, "Nothing contained in this Agreement and no action taken pursuant to the provisions of this Agreement shall create or be construed to create a trust of any kind, or a fiduciary relationship between the Bank and the Director, or his designated beneficiary(ies) or any other person." [Doc. 13-2, ¶ 7.03] However, defendant neglects to address the Split-Dollar Agreement, which provides: "The Corporation is hereby designated as the named fiduciary under this Agreement." [Doc. 13-3, ¶ 11] In light of the foregoing, the Court finds defendant has failed to carry its burden of proof to show dismissal of plaintiffs' claim for conversion is warranted. This Court makes no ruling, whatsoever, on the merits, or lack thereof, of the underlying claim, rather finds the movant has failed to carry its burden to establish it is due the relief requested within the motion filed.

9

**B.     Wage Payment Act**

Plaintiffs' complaint sets forth a claim for violation of the Wage Payment Act, La. R.S.

23:631, as follows:

> The wages earned by Plaintiffs during their combined years of service as
> Directors of BNR/Regions were deferred by agreement until their death or retirement.
> Those accrued wages, plus interest, total nearly $300,000 plus interest. By reason of
> the foregoing, Regions' failure to timely and properly pay those wages to Plaintiffs
> renders Regions liable to them under The Wage Payment Act (LSA - R.S.
> 23:631-632) for damages, penalties and attorney's fees.

[Doc. 1, ¶ 50]

In the motion to dismiss, defendant argues plaintiffs have failed to state a claim, pursuant to

the Wage Payment Act, upon which relief can be granted, because the Wage Payment Act is

inapplicable in this matter.  Essentially, defendant's position is that plaintiffs have no right of action

pursuant to that statute:

> The Wage Payment Act is designed to compel prompt payment of wages
> when an employee is discharged or resigns, and these statutes are penal in nature and,
> therefore, must be strictly construed and yield to equitable defenses. *Wyatt v.
> Avoyelles Parish School Bd.*, 831 So.2d 906 (La. 2002). The statute requires that
> "Upon the discharge of any *laborer or other employee* of any kind whatever, it shall
> be the duty of the person employing such laborer or other employee to pay the
> amount then due under the terms of employment, whether the employment is by the
> hour, day, week, or month, on or before the next regular payday or no later than
> fifteen days following the date of discharge, whichever occurs first." La. Rev. Stat.
> § 23:631(A)(1)(a). Plaintiffs were never laborers or employees of Regions, and the
> Complaint does not assert that they are. Indeed, the BNR Agreement that governs the
> parties' compensation expressly provides that it "shall not be construed as a contract
> of employment." Par. 7.03. Moreover, the BNR Agreement provides that "[a]ny
> benefits payable under this Agreement shall not be deemed salary." Par. 7.07. The
> Plaintiffs have no cause of action under the Wage Payment Act, and these claims
> must be dismissed.

[Doc. 13-1, p.8]

Plaintiffs do not address this claim in their opposition memorandum.

10

The Court finds defendant's argument to be well-founded and plaintiffs have provided no argument, evidence, or jurisprudence to meet the otherwise persuasive argument made by movant. Accordingly, defendant's motion as to this claim is GRANTED and plaintiffs' claim made pursuant to the Wage Payment Act is DISMISSED.

## C.   Louisiana Unfair Trade Practice and Consumer Protection Act & Federal Trade Commission Act

Plaintiffs' complaint asserts a claim for violation of the Louisiana Unfair Trade Practice and Consumer Protection Act, as well as the Federal Trade Commission Act:

> By reason of the foregoing, Regions' tactics, which are tantamount to bad faith breach of contract, unethical conduct, unjust enrichment, detrimental reliance, wrongful conversion, fraud, age discrimination, and violation of the Wage Payment Act, constitute violations of the Louisiana Unfair Trade Practice and Consumer Protection Act (LSA-R.S. 51:1406), as well as the Federal Trade Commission Act (15 U.S.C. 41), and further amount to breach of the deferred compensation Agreements, entitling Plaintiffs to immediate payment of all 15 annual installments due under the deferred compensation Agreements to Plaintiffs as retired Directors, plus damages, attorney's fees, penalties, pre-judgment interest and all costs of these proceedings.

[Doc. 1, ¶ 52]

In the motion to dismiss, defendant argues plaintiffs have failed to state a claim pursuant to either statute, as both are inapplicable in this matter.  Specifically, defendant argues:

> Plaintiffs cannot state a claim against defendants for violations of the Louisiana Unfair Trade Practice and Consumer Protection Act ("LUTPA") and the Federal Trade Commission Act (FTC Act). First, banks like Regions are not subject to LUTPA, which provides that:
>
> The provisions of this Chapter shall **not** apply to:
>
> > (1)    Any federally insured financial institution, its subsidiaries, and affiliates or any licensee of the Office of Financial Institutions, its subsidiaries, and affiliates or actions or transactions subject to the jurisdiction of the Louisiana Public Service

11

> Commission or other public utility regulatory body, the commissioner of financial institutions, the insurance commissioner, the financial institutions and insurance regulators of other states, or federal banking regulators who possess authority to regulate unfair or deceptive trade practices.

La. R.S. 51:1406; *see Bank One, N.A. v. Colley*, 294 F. Supp. 2d 864, 868 (M.D. La. 2003) (holding that a national banking association chartered by or under the authority of the United States was exempt from the LUTPA as a matter of law); *State Bank of Commerce v. Demco of Louisiana, Inc.*, 483 So.2d 1119 (La. App. 5 Cir. 1986). Regions is a federally insured financial institution that is not subject to LUTPA. Second, "[T]here is no private cause of action for violation of the FTC Act." *Fulton v. Hecht*, 580 F.2d 1243, 1248 n.2 (5th Cir. Fla. 1978); *see Holloway v. Bristol-Myers Corp.*, 485 F.2d 986, 1002 (D.C. Cir. 1973). Accordingly, Plaintiffs cannot state a claim under the FTC Act. Plaintiffs' claims for "unfair trade practices" must be dismissed.

Plaintiffs do not address this claim in their opposition memorandum.

The Court finds defendant's argument to be well-founded and plaintiffs have provided no argument, evidence, or jurisprudence to meet the otherwise persuasive argument made by movant. Accordingly, defendant's motion as to this claim is GRANTED and plaintiffs' claims made pursuant to the Louisiana Unfair Trade Practice and Consumer Protection Act and the Federal Trade Commission Act (FTC Act) are DISMISSED.

**D.     Breach of Contract**

Plaintiffs set forth a claim for breach of contract as follows:

45.

> Despite currently maintaining that plaintiffs are former directors, when their respective deaths occur, Regions will have no problem representing to MONY that Plaintiffs were active Regions Directors for purposes of collecting $1.5 million in an extraordinary, unearned, non-taxable windfall. In contrast, when the time came where Regions was required to honor the contractual commitments contained in the BNR Agreements, Regions improperly attempted to reclassify Plaintiffs as former Directors, so Regions could drastically curtail the payments due Plaintiffs under the deferred compensation Agreements.

12

46.

Regions' attempt to unilaterally terminate Plaintiffs' service as a Director so that Regions could realize an unconscionable benefit from their forced ouster demonstrates that Regions improperly placed its own financial gain far ahead of the contractual and fiduciary obligations Regions owes Plaintiffs under the BNR Agreement, as well as far ahead of the duties and obligations owed by Regions to Plaintiffs as Directors of the Bank.

47.

By reason of the foregoing, Regions is liable to Plaintiffs for breach of contract, as well as for its bad faith in connection with that breach. Plaintiffs are entitled to nonpecuniary damages under La. C.C. art. 1998, including but not limited to damages for stress and mental anguish.

[Doc. 1, p.14]

In their supporting memorandum, plaintiffs argue as follows:

Regions was obligated to initiate payments under the BNR Agreement within thirty days of termination of Madeleine's service on the Board. Regions breached the BNR agreement by failing to tender notice or any form of payment due to Madeleine under the agreement for almost three years after kicking her off the Advisory Board. In addition, Regions breached the following provisions of the BNR Agreement:

1)  Section 1.08 - requiring Regions' Board of Directors to designate a Plan Administrator, which was not done; indeed, administration of the BNR Agreement since the merger has been nothing short of a disaster;

2)  Section 2.01 - providing that plaintiffs' agreed to defer fees for their services as directors in exchange for the benefits promised by Regions;

3)  Section 5.01 - providing pre-set amounts of retirement benefits annually for fifteen (15) years when plaintiffs' reach the age of 70;

4)  Section 6.02 - obligating Regions to commence retirement benefit payments to Madeleine beginning February 1, 2005 in the event regions regarded Madeleine as a terminated director effective December 31, 2004 for the purposes of the BNR Agreement; and

13

5)      Section 6.03 - allowing plaintiffs to elect, subject to approval by the Plan Administrator, to defer receipt of any benefits until reaching their Plan Retirement Dates and providing that notice be given to plaintiffs at least 90 days prior to their termination so that they may be given adequate time to make an election.

Furthermore, the amount tendered to plaintiffs was only a portion of what was properly owed to them under the BNR Agreement. Regions claims that Madeleine's account was worth only $83,635.00 as of March 31, 1995, and that Jimmy's account was worth $47,610.00 on that date. These accounts, however, should have continued to accrue interest until the plaintiffs' retirement date, whereupon Madeleine will be entitled to $69,705.00 annually for fifteen years, and Jimmy will be entitled to $45,379.61 annually for fifteen years. *See Summary of Plan Benefits, Exhibits* A & B.

At the very minimum, Regions has breached the BNR Agreement by failing to unconditionally and timely tender the proper amounts due under their own interpretation of the BNR Agreement.

[Doc. 24, pp.16-17]

In response to plaintiff Caillet's argument that Regions breached the BNR Agreement by failing "to initiate payments under the BNR Agreement within thirty days of termination of Madeleine's service on the Board," defendant argues: (1) "Caillet cannot sustain a cause of action on this point because Regions has offered to pay the amounts due plus interest"; and (2) "[b]ecause Caillet has not suffered any damages, she cannot state a cause of action for breach of contract on this basis." [Docs. 13-1, p.6; 25-1, p.6] With regard to both plaintiffs' allegations that defendant is in breach of the contract by failing "to designate a Plan Administrator," defendant argues dismissal is appropriate because "Plaintiffs have not suffered any damages due to this purported breach." [Docs. 24, p.16; 25-1, p.6] As is evident from the foregoing, defendant is not arguing plaintiffs have failed to state a cause of action, but rather, defendant asserts certain *factual* defenses to portions of

14

plaintiffs' claims for breach of contract.[1]  Because an evaluation of the foregoing defenses would require an inquiry beyond the pleadings, dismissal pursuant to Rule 12(b)(6) is inappropriate.

As noted above, plaintiffs assert "Regions breached the following provision[] of the BNR Agreement: . . . Section 2.01 - providing that plaintiffs' agreed to defer fees for their services as directors in exchange for the benefits promised by Regions . . . ." [Doc. 24, p.16] Plaintiffs have provided no further clarification, and consequently, this Court is unable to discern what actions, if any, of defendant plaintiffs allege were in violation of this provision of the contract.  Nonetheless, defendant responds:

> This assertion lacks any legal basis.  The proposition is inconsistent with Paragraph 3.01 of the BNR Agreement, which does not require actual segregation of deferred compensation.  It is also inconsistent with Paragraph 2.02 of the Amendment which indicates that as of the March 31, 1995, no fees were to be deferred.  Plaintiffs cannot sustain a cause of action for purported failure to defer fees because Regions was under no obligation to do so.

[Doc. 25-1, p.6 (footnotes omitted)] While defendant's assertions appear to conform with the terms of the contract, it is unclear whether or not those assertions are responsive to the breach plaintiffs allege, due to plaintiffs' lack of clarity in its pleading.  In light of the foregoing, and mindful of existing jurisprudence, plaintiffs are hereby granted leave to supplement their complaint within fifteen (15) days from this ruling, with "enough facts to state a claim to relief that is plausible on its face," with regard to their claim that defendant has breached Section 2.01 of the BNR Agreement. *Twombly*, 127 U.S. at 570.

Similarly, plaintiffs assert defendant is in breach of Section 5.01 of the contract ("providing pre-set amounts of retirement benefits annually for fifteen (15) years when plaintiffs' reach the age

---

[1]The Court additionally notes neither of defendant's factual assertions referenced above is properly supported pursuant to the Federal Rules of Civil Procedure.

15

of 70"), but have provided no detail as to how defendant is in breach of that provision. [Doc. 24, p.16] From a review of the contract, and section 5.01 in particular, it appears on its face the argued portion of the contract is inapplicable to this matter, as it involves a failed suspensive condition.[2] Specifically, that portion of the contract addresses the amount of payments to be made to a director's beneficiary "[i]f the Director *shall die* before reaching his 'Plan Retirement Date', *but while still continuously serving as a director of the Bank. . . .*" [Doc. 13-2, p.4 (emphasis added)]. Plaintiffs are neither deceased, nor still serving as directors of Regions, and thus, this provision of the contract would appear to have no bearing in this matter. Nevertheless, out of an abundance of caution, should plaintiffs be of the opinion they have a cause of action for a breach of this provision of the contract, they are hereby granted leave to supplement their complaint within fifteen (15) days of this ruling, with "enough facts to state a claim to relief that is plausible on its face," with regard to their claim that defendant has breached Section 5.01of the BNR Agreement. *Twombly*, 127 U.S. at 570.

With regard to plaintiffs' assertion that defendant is in breach of section 6.03 of the contract (permitting directors to defer receipt of any benefits due until reaching their plan retirement date if certain conditions are met), as defendant properly notes, plaintiffs have failed to allege that they ever attempted to avail themselves of this benefit. Accordingly, should plaintiffs wish to pursue a claim for breach of section 6.03 of the contract, again, mindful of existing jurisprudence, they must supplement their complaint within fifteen (15) days of this ruling, with factual information sufficient to state a cause of action.

---

[2]*See* La. Civ. Code art. 1767 ("A conditional obligation is one dependent on an uncertain event. If the obligation may not be enforced until the uncertain event occurs, the condition is suspensive."); La. Civ. Code art. 1773 ("Whether or not a time has been fixed, the condition is considered to have failed once it is certain that the event will not occur.")

Finally, as to plaintiffs' assertion that "the amount tendered to plaintiffs was only a portion of what was properly owed to them under the BNR Agreement," defendant has not specifically addressed that assertion. Accordingly, the motion, in that regard, is DENIED, at this juncture, to the extent it seeks dismissal of plaintiffs' claim that "the amount tendered to plaintiffs" constitutes a breach of contract.

## E.    Unjust Enrichment

Plaintiffs set forth a claim for unjust enrichment in their Complaint as follows:

> When Regions' anticipatory - - but certain - - receipt of $ 1.5 million in life insurance proceeds on Plaintiffs' lives is juxtaposed against Regions' concomitant refusal to honor the intent of the parties and properly pay full retirement benefits to Plaintiffs, the result is an unethical and unjust enrichment to Regions at the expense of Plaintiffs and their heirs and beneficiaries. Regions is now answerable in damages, by reason of the foregoing, for unjust enrichment.

[Doc.1, ¶ 44]

Pursuant to La. Civ. Code art. 2298, the remedy of unjust enrichment is subsidiary in nature, and "shall not be available if the law provides another remedy." La. Civ. Code art. 2298; *Walters v. MedSouth Record Management*, LLC, 38 So.3d 245, 246 (La. 2010) (having pled a delictual action, plaintiff was precluded from seeking to recover under theory of unjust enrichment); *Fidelity & Deposit Co. of Maryland v. Smith*, 730 F.2d 1026, 1030 (5th Cir. 1984) (claim of unjust enrichment unavailable where contract governed the parties relationship). The unjust enrichment remedy is "only applicable to fill a gap in the law where no express remedy is provided." *Id.* (quoting *Mouton v. State*, 525 So.2d 1136, 1142 (La.App. 1st Cir.1988). As plaintiffs in this matter have several "express remedies" available to them, as evidenced by their Complaint, they are precluded from seeking to recover under the theory of unjust enrichment. Accordingly, plaintiffs' claim for unjust

17

enrichment is DISMISSED.

### F. Detrimental Reliance

Plaintiffs set forth a claim for detrimental reliance in their complaint, as follows:

> Plaintiffs relied upon the annual Benefit Summaries regularly provided to them by Regions, as well as upon the representations of Regions' Human Resources officials, but did so to their detriment, given Regions' refusal to honor its contractual obligations and properly pay full retirement benefits to Plaintiffs under the BNR Agreements. By reason of the foregoing, Regions is liable for damages to Plaintiffs for detrimental reliance.

[Doc. 1, ¶ 43] In their opposition memorandum, plaintiffs expound:

> Regions issued annual "Summary of Plan Benefits" which are representations by word. *Exhibits A and B.* Plaintiffs relied on these official representations by Regions of their account balances with interest rate calculations and payment plans. Relying on a bank's official representations of account balances and interest rates is inherently reasonable.
>
> Plaintiffs also relied on representations by Regions that BNR's retirement age of 70 would be honored, creating an entitlement reinforced through Regions' behavior and continuing performance under the BNR Agreement, despite plaintiffs' demotion to the Advisory Board.

[Doc. 24, pp. 17-18]

In response, defendant argues the summaries of plan benefits "cannot be considered on a motion to dismiss," that the summaries "simply reinforce the conclusion that any reliance on summaries is completely unreasonable," and "the BNR Agreement provides the method of calculating Plaintiffs' deferred compensation."

Whether the summaries of plan benefits are exhibits this Court can consider in connection with this motion to dismiss is an issue the Court declines to decide at this juncture, as it finds dismissal of plaintiffs' claim for detrimental reliance pursuant to Fed. R. Civ. P. 12(b)(6) is unwarranted at this time. Defendant essentially asks this Court to evaluate the "reasonableness" of

18

plaintiffs' reliance upon those documents[3] - an inquiry the Court finds to be more suited to summary judgment or trial on the merits than a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6). *Bell Atl. Corp. v. Twombly*, 127 S.Ct. 1955, 1965, 550 U.S. 544, 167 L.Ed.2d 929 (2007) ("Of course, a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable").

## G.    Fraud

Plaintiffs set forth a claim of fraud in their complaint as follows:

> The foregoing facts, particularly in light of Regions' misrepresentation and bad faith, along with its improper, discriminatory and unilateral alteration of Plaintiffs [sic] status and their rights under the deferred compensation Agreements, all under a plan to deliver an unjust enrichment for Regions, amount to a pattern of fraud under La. C.C. Art. 1953, *et seq.*, which entitles Plaintiffs to damages and attorney's fees.

[Doc. 1, ¶ 51]

In its motion, defendant argues "a fraud action is delictual in nature, and subject to the one year prescriptive period." Defendant then asserts Ms. Caillet's claim has prescribed, arguing, "[a]ccording to the Complaint, Caillet has known since August 6, 2007, the amount of benefits Regions determined she is entitled to."[4]   [Doc. 13-1, pp.15-16] In support of this argument, defendant cites *Clark v. Constellation Brands, Inc.*, 348 Fed. Appx. 19, 21-22 (5th Cir. 2009). However, that case plainly states "[a] fraud claim under Louisiana law [should Louisiana law apply

---

[3]The Louisiana Civil Code provides: "A party may be obligated by a promise when he knew or should have known that the promise would induce the other party to rely on it to his detriment and the other party was *reasonable* in so relying." La. Civ. Code art. 1967 (emphasis added). All parties agree that to prevail on this claim, plaintiffs must show: (1) representation by conduct or words; (2) justifiable reliance; and (3) a change in position to one's detriment because of the reliance. [Docs. 24, p.17; 13-1, p.13 (citing *Suire v. Lafayette City-Parish Consol. Gov't*, 907 So.2d 37, 59 (La. 2005).

[4]The complaint in this matter was filed on December 17, 2010.

to whichever contract might be at issue] may arise *in both contract and in tort*." *Id.* at 21. (emphasis

added).  The *Clark* court further states that the prescriptive period for actions based upon delictual

or tortious fraud "is one year and begins to run from the date injury of [sic] damage is sustained,"

whereas the prescriptive period for actions based upon contractual fraud is "five years after the

discovery of the fraudulent behavior giving rise to the cause of action" *Id.* at 21-22.[5]  As defendant

has failed to carry its burden (in that it has failed to denote, argue, or establish the prescriptive period

applicable to this matter), the motion to dismiss plaintiff Caillet's claim of fraud on the basis of

prescription is DENIED for failure of movant to carry its burden to establish it is due the relief

requested.

---

[5]The *Clark* court continues:

> Under Louisiana law, "[t]he correct prescriptive period to be applied in any action depends on the nature of the action; it is the nature of the duty breached that should determine whether an action is in tort or in contract." *Terrebonne Parish Sch. Bd. v. Mobil Oil Corp.*, 310 F.3d 870, 886 (5th Cir.2002). Louisiana courts look to the allegations and prayer for relief of the petition to determine the true nature of the action and the applicable prescriptive period. *See Ins. Storage Pool, Inc. v. Parish Nat'l Bank*, 97-2757, p. 4 (La.App. 1 Cir. 5/14/99); 732 So.2d 815, 817. Regarding the distinction between actions in tort and in contract, Louisiana courts have consistently held that:

>> The classical distinction between "damages ex contractu" and "damages ex delicto" is that the former flow from the breach of a special obligation contractually assumed by the obligor, whereas the latter flow from the violation of a general duty to all persons. Even when tortfeasor and victim are bound by a contract, courts usually apply the delictual prescription to actions that are really grounded in tort.

> *Trinity Universal Ins. Co. v. Horton*, 33,157, p. 2 (La.App. 2 Cir. 4/5/00); 756 So.2d 637, 638. Even when a contract exists between the parties, unless a specific contract provision or duty is breached, Louisiana treats the action as tort. *Id.* In other words, the mere fact that the circumstances arose in the context of a contractual relationship does not make the cause of action contractual.

*Id.* at *22.

20

Defendant additionally argues the complaint filed in this matter fails to satisfy the requirements of Fed. R. Civ. P. 9(b), which requires a party alleging fraud to "state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). More specifically, defendant argues:

> Plaintiffs have failed to allege any material misrepresentations by Regions with the particularity required by the Federal Rules. In Paragraph 15 they allege that "Regions didn't tell the Directors the whole story" regarding the purchase of life insurance and the Split Dollar Agreement. In Paragraph 43, they assert that they relied on "annual Benefit Summaries" and "representations of Regions' Human Resources officials" regarding their benefits. The Split Dollar Agreement was entered into over ten years before the filing of this lawsuit. It is impossible to determine the content or date of the purported "Benefit Summaries" or "representations of Regions' Human Resources officials" from the facts plead in the Complaint.

[Doc. 13-1, p.15]

Rule 9(b) provides as follows: "In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." The purpose of Rule 9(b) is to "ensur[e] the complaint 'provides defendants with fair notice of the plaintiffs' claims, protects defendants from harm to their reputation and goodwill, reduces the number of strike suits, and prevents plaintiffs from filing baseless claims then attempting to discover unknown wrongs." *United States ex. rel. Grubbs v. Kanneganti,* 565 F.3d 180, 190 (5th Cir.2009) (quoting *Melder v. Morris,* 27 F.3d 1097, 1100 (5th Cir.1994)). While the Fifth Circuit has noted, "What constitutes 'particularity' will necessarily differ with the facts of each case," it does mandate that "[a]t a minimum, Rule 9(b) requires allegations of the particulars of time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby." *Benchmark Electronics, Inc. v. J.M. Huber Corp.,* 343 F.3d 719, 724 (5th Cir. 2003)(quoting *Guidry v. Bank of LaPlace,* 954 F.2d

21

278, 288 (5ᵗʰ Cir. 1992); *Tel-Phonic Servs., Inc. v. TBS Int'l, Inc.*, 975 F.2d 1134, 1139 (5th

Cir.1992)).  As is often repeated in this Circuit, "Put simply, Rule 9(b) requires 'the who, what,

when, where, and how' to be laid out." *Benchmark* at 724 (quoting *Williams v. WMX Techs., Inc.*,

112 F.3d 175, 179 (5ᵗʰ Cir. 1997)); *see also Flaherty & Crumrine Preferred Income Fund, Inc. v.*

*TXU Corp.*, 565 F.3d 200, 207 (5ᵗʰ Cir.2009) ("This Circuit's precedent interprets Rule 9(b) strictly,

requiring the plaintiff to 'specify the statements contended to be fraudulent, identify the speaker,

state when and where the statements were made, and explain why the statements were

fraudulent.'")(quoting *Williams* at 177).   State-law fraud claims are subject to the pleading

requirements of Federal Rule of Civil Procedure 9(b). *Dorsey v. Portfolio Equities, Inc.,* 540 F.3d

333, 339 (5ᵗʰ Cir.2008).

    As set forth above, the portion of plaintiffs' complaint designated as "<u>FRAUD</u>" is very brief,

and consists entirely of conclusory allegations.  While it is true plaintiffs have set forth many facts

in their seventeen page complaint, it is not for this Court to ferret through those facts to determine

which of those facts plaintiffs might be alleging in support of their claim of fraud; rather, the better

practice is for plaintiffs to have set forth their claim of fraud with particularity and specificity.

Accordingly, again, mindful of the jurisprudence, plaintiffs are granted leave to supplement their

complaint within fifteen (15) days of this ruling, in order to state with particularity the circumstances

constituting fraud or mistake, in conformity with Fed. R. Civ. P. 9(b).

## IV.    Conclusion

    In light of the foregoing, the motion to dismiss [Doc. 13] is GRANTED IN PART and

DENIED IN PART.  The motion is GRANTED to the extent it seeks dismissal of plaintiffs' claims

asserted pursuant to the Wage Payment Act, the Louisiana Unfair Trade Practice and Consumer

Protection Act, the Federal Trade Commission Act, and unjust enrichment. The motion is DENIED to the extent it seeks dismissal of plaintiffs' claims for conversion, breach of contract, detrimental reliance, and fraud.

Additionally, plaintiffs are hereby GRANTED LEAVE to file a supplemental complaint with regard to their claims for breach of contract and fraud with fifteen (15) days of this ruling.

THUS DONE AND SIGNED in Lafayette, Louisiana, this _____ day of March, 2012.

REBECCA F. DOHERTY
UNITED STATES DISTRICT JUDGE

23